IN THE

# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1896, IN THE
EIGHTY-FIRST YEAR OF THE STATE.

---

GREEN ET AL. *v.* BROWN, ADMINISTRATOR.

[No. 16,636. Filed September 30, 1896.]

APPEAL.—*Assignment of Error.*—Where the court's conclusions of law relate to separate demands and liens against different persons and interests, and are in form but one conclusion, an assignment of error joined in by all the appellants, questions the correctness of the conclusions severally. *p. 3.*

SUBROGATION. — *Redemptioner's Lien.*— *Partition.*— Decedent · conveyed a quarter section of land to his son E.; afterwards E. conveyed the south half of said tract to his brother J., who assumed and agreed to pay one half of the unpaid purchase price of the entire tract. Each son mortgaged his interest to a third party, and decedent in the mean time having been adjudged ʼof unsound mind, his guardian obtained a decree against E. and J., declaring ‚a vendor's lien, subject to the said mortgages, and purchased said lands. Decedent having died during the year, for redemption the sheriff conveyed the lands to his' heirs at law, including E. and J., and after the two mortgages had been foreclosed and the property purchased by the mortgagee, decedent's administrator, upon order of court, with the estate's money, redeemed the lands from the mortgage sales. Thereafter, partition among said heirs was had, and sixty acres off of the south half of said tract was set off to E., J., and four other heirs as tenants in common, and afterwards, by exchange of conveyances, ten acres off of the east end of said sixty

Green *et al. v.* Brown, Administrator.

acres was conveyed to J., and the remaining fifty acres to E., and the other heirs. *Held,* that by subrogation to the rights of the . mortgagee, the estate had an equitable lien on J.'s ten acres for his share of the redemption. money. On the other hand, that the estate had no lien on E.'s undivided interest in the fifty acres, as the mortgage given by him was on the north half of the tract of land, and the lien must be confined to the land affected by the mortgage. *pp. 3-8.*

PARTITION.—*Title to the Real Estate Presumed not to be in Issue.*—In proceedings for the partition of real estate, title is presumed not to be in issue. *p. 9.*

SAME.—*Decedent's Estates.*—*Lien.*—A decree in partition procured by the heirs, pending the settlement of a decedent's estate, does not preclude the administrator from asserting liens held by the estate against the realty partitioned, the administrator not being made a party to the proceedings. *p. 10.*

LIENS.—*Priority Of.*—The existence of the mortgage executed by J. remaining of record unsatisfied, the foreclosure proceedings, sale and redemption, together with the administrator's report disclosing the payment by him of the money in redemption without a corresponding charge for moneys received in repayment of such redemption, were sufficient to disclose the equity in favor of the estate against J's interest in the land, and the estate's lien would be prior to all liens attaching subsequent to the redemption by administrator. *p. 11.*

EXECUTORS AND ADMINISTRATORS.—*Report and Resignation of Administrator, When not a Final Report.*—An administrator's report showing a complete accounting of all receipts and disbursements, and that no funds remain in his hands, which report is excepted to by certain claimants, and is accompanied by administrator's resignation, is not a final report within the meaning of the statute, but leaves the estate open for further administration. *pp. 5 and 11.*

From the Hamilton Circuit Court. *Reversed.*

*Claypool & Claypool,* for appellants.

*Fertig & Alexander* and *Roberts & Vestal,* for appellee.

HACKNEY, J.—This was a suit by the appellee to establish demands against Eli Green and Jacob C. Green, respectively, and to enforce against them and their co-appellants an equitable lien upon their interests, respectively, in sixty acres of land.

Demurrers were sustained to answers and to amended answers, filed jointly and severally by the numerous parties, and a special finding of the facts, with a conclusion of law stated, was rendered by the court. As to one of the appellants, no assignment of error is made as to rulings upon pleadings, and as to the other appellants, assignments as to such rulings are so indefinite, both as to parties and pleadings, as to render confusion inextricable. The first and sixth assignments of error relate to the conclusion or conclusions of law and are joined in by all of the appellants. It is objected, by the appellee, that these assignments relate to conclusions of law collectively, and, therefore, raise no question as to conclusions severally. While the conclusion stated relates to separate demands and liens against different persons and interests, it is in form but one conclusion, and may be assigned as one. The correctness of the conclusion of law stated, it is conceded, involves the questions presented by the various answers to which demurrers were sustained, and in the conclusion so stated all of the appellants are interested.

The facts found were in substance that in March, 1880, Seth Green owned a quarter section of land in Hamilton county, and conveyed it to Eli Green for a consideration stated but never paid. Eli conveyed the south half of the land to Jacob C. Green upon the assumption by the latter of one half of the purchase-price owing to Seth Green. In May, 1882, Eli mortgaged the north half of said land for $1,300.00, and Jacob mortgaged the south half for $1,250.00, and the mortgages were duly recorded. Thereafter said Seth Green was adjudged of unsound mind, and his guardian obtained, against Eli and Jacob, a decree declaring a vendor's lien for $3,468.59, the balance of said purchase price, subject to said two mortgages.

The guardian purchased said lands upon said decree, and, Seth Green having died during the year for redemption, the sheriff conveyed the same to the heirs at law of said Seth, including said Eli and Jacob, with others.  Later said two mortgages were foreclosed and the property was purchased thereunder by the mortgagee.  An administrator of Seth Green's estate was appointed and, upon order of court, he redeemed, with the estate's money, the lands from said mortgage sales, taking assignments of the certificates of purchase, expending therefor, as to Eli, $1,756.50, and, as to Jacob, $1,806.50, neither of which sums was ever repaid to said estate.  And still later partition was had among said heirs, in proceedings for that purpose, and sixty acres off of the south end of the south half of said quarter section were set off to Eli, Jacob, Seth J., Isaac, Phama and Rachel Green, as tenants in common, and the remainder of said quarter section was set off to the other heirs.  After this partition, and in further partition of said sixty acres, by an exchange of conveyances, ten acres, off the east end of said sixty acres, were conveyed to said Jacob and his wife, and the remaining fifty acres to said five former tenants in common.  Thereafter Eli conveyed his undivided one-fifth of said fifty acres to his said four tenants in common.

Before said first partition, Rachel and Phama Green mortgaged their undivided two-sixteenths interests in the quarter section to Sallie B. Loomis for $600.00.  After the partition Eli mortgaged his one-sixth interest in said sixty acres to one Rhodes for $45.00 and to one Heath for $77.00, and said Rachel, Phama and Isaac executed to said Sallie B. Loomis a mortgage of said fifty-acre tract for $325.00.  In the partition proceedings Claypool & Ketcham were the attorneys for said several parties named Green, and as-

serted a lien upon the decree and against said sixty-acre tract for $400.00 for their services. Thereafter, and when said mortgage for $325.00 was executed, said attorneys' lien was released in consideration of the execution to a trustee for Claypool & Ketcham of a mortgage for $425.00 upon said sixty acres. All of said mortgages were duly recorded and are unpaid and unsatisfied and were executed while said first mentioned two mortgages, those from Eli and Jacob, were of record and unsatisfied.

It is found, also, that said administrator, after making said redemption, filed his report and resignation as such, said report professing to be a complete accounting of receipts and disbursements, made since his former report, showing the expenditure for said redemptions and that no funds remained in his hands. Certain officers excepted to said report and alleged claims for fees due from said estate. No hearing was had upon said exceptions, but the court accepted the resignation of the administrator and approved his report, excepting as to the matters involved in said exceptions. It was further found that the appellee was appointed administrator *de bonis non* after the partition, the conveyance and mortgages aforesaid; that the amount owing by Jacob on account of said redemption was $1,756.50, and that owing from Eli on said redemption was $1,806.50.

Upon said facts ·the court's conclusion was as follows: "And as conclusions of law upon the foregoing facts the court finds that the plaintiff for the use of said estate does now have and hold an equitable lien on said ten acres off the south side of said lands, now in the name of Jacob C. Green and wife, for said sum of $1,756.50, by subrogation to the rights of said security company under said mortgage and the foreclosure and sale aforesaid, and that he is entitled to foreclosure of

said lien without relief against all the defendants herein, and that he is entitled to a like lien and foreclosure against the undivided one-fifth part of fifty acres off of the west side of said sixty acres, being the former interest of Eli Green therein, for the said sum of $1,806.50, and that said liens are superior to any and all right, title, interest or lien of the defendants herein or upon said portions of said lands."

One question presented is as to the correctness of the conclusion that upon the claim against Eli, a lien could be maintained against his interest in said fifty-acre tract, aside from the question of priority as to other liens, the mortgage and redemption, at the foundation of that claim, having been confined to the north half of said quarter section and the fifty acre tract having been on the south side of the south half of said quarter section. The lien which equity affords to the redemptioner must be confined to the property affected by the original lien from which redemption is made. As in this case, the claim and right of subrogation as against Eli is through the mortgage and the redemption under it. The claim, independently of the mortgage, has no feature giving support to a lien. Equity seizes upon the mortgage and the redemption, on behalf of Eli, as supplying the basis of the lien, and the amount expended in redemption simply measures the extent of the lien. There is in this case no effort to extend that lien to the property covered by the mortgage; on the contrary, it is only sought to attach the lien, as to Eli, to the sixty-acre tract. To support this effort it could only be asserted that the claim against Eli supplied the basis of the lien, and that the lien did not arise by subrogation or through the mortgage. If the estate stood in the shoes of the mortgagee it could only reach the property included in the mortgage.

As said in Freeman on Cotenancy and Partition, section 478, "When a partition is made, the interest of a lienholder, * * * is removed from the undivided moiety of the whole, and attached to the whole of the purparty assigned to the tenant in common against whose moiety the lien was a charge. If the mortgage, however, embraced the interest of the mortgagor in some specific part of the common property, it cannot through the operation of the partition be extended to property not embraced in such mortgage."

The latter proposition is from and is supported by the case of *Green* v. *Arnold,* 11 R. I. 364, 23 Am. Rep. 466.

In the present instance, however, the mortgage by Eli was not of common property, but was of property held by him in severalty. Subsequently he became an owner in common with others of the property covered by the mortgage, and was also an owner in common with such others in the tract mortgaged by Jacob; but we do not perceive that the subsequent common ownership of the two tracts supplies the reason or authority for proceeding through his separate mortgage of a distinct parcel to attach a lien to another and distinct parcel as to intervening lienholders.

The conclusion, therefore, that Eli's debt should stand as an equitable lien against his interest in the fifty acres was erroneous.

It is conceded by counsel for the appellants that in the absence of partition and intervening mortgages and conveyances an equitable lien was enforceable against the interest of Jacob in the lands covered by his mortgage, and this, we think, must be true. It remains, therefore, to inquire as to the effect of the partition, conveyances and mortgages. To the proposition that the partition was an adjudication of the equity here sought to be maintained is cited *Elwood* v.

*Beymer*, 100 Ind. 504. In that case Mrs. Beymer, the widow of a son of the intestate, sought partition against the widow and children of the intestate; Mrs. Elwood, the widow of said intestate, by cross-complaint, set up certain claims against Mrs. Beymer and her husband, in her favor, and a charge for an advancement to said husband by the intestate. These were sought to be charged against Mrs. Beymer as a lien upon and to the extinguishment of her interest in the land. To said cross-complaint it was answered that in a previous partition proceeding, between the same parties, wherein the lands now in question were set off to Mrs. Elwood, Mrs. Beymer and others, as tenants in common, it had been agreed in writing by all of the parties and decreed by the court that in the lands, so set off, Mrs. Beymer owned an undivided one-sixth interest, the interest now sought by her to be severed. This answer was held sufficient upon the theory that the former proceeding put at rest the liens asserted by Mrs. Elwood, as having been deemed adjudicated, because they might have been asserted and adjudicated in such former proceeding.

In that case there had been no administration of the estate of the intestate, the ownership, in addition to the mere identification of interest, had been agreed upon and adjudged; the claims, other than the small advancement, do not appear from the allegations of the cross-complaint to have possessed any merit as the basis for an equitable lien upon the land. Whether, in case of administration, the claims asserted would have been enforcible by the administrator or by the heirs in the partition proceeding, the case does not decide. The extent to which a claim against an heir may be asserted to diminish the interest of such heir in the land of an intestate as between heirs, would seem to depend upon the issue of ownership or title,

for certainly the result is to lessen the interest upon one side and to increase the interest of the other.

A question of title is not, ordinarily, presumed to be in issue in partition proceedings, on the contrary, the presumption is that title is not in issue. *Davis* v. *Lennen*, 125 Ind. 185; *Spencer* v. *McGonagle*, 107 Ind. 410; *Luntz* v. *Greve*, 102 Ind. 173; *Fleenor* v. *Driskill*, 97 Ind. 27; *Miller* v. *Noble*, 86 Ind. 527.

This presumption must yield only to requirements of the law that title shall be in issue in partition and where it affirmatively appears that title is in issue. So far as title is in issue, with reference to advancements, that issue is required by the statute. Section 1203, Burns' R. S. 1894 (1189, R. S. 1881).

In the case of *Elwood* v. *Beymer, supra,* title having been in issue, both by agreement and, as to the element of advancements, by statute, such questions were put at rest. That the conclusion of that case was upon the presumption that title was in issue in the original partition proceeding is strengthened by the citation there of *Crane* v. *Kimmer*, 77 Ind. 215, which held that in partition proceedings title was in issue impliedly. The rule of the case so cited does not now prevail in this State, as we have already shown, and that case was criticised in *Miller* v. *Noble, supra,* upon the very point to which it was cited.

We do not, therefore, regard *Elwood* v. *Beymer, supra,* as an authority upon the questions of this case. As to whether the partition proceeding was an adjudication of the lien, it may be important to inquire where the power to enforce the lien resided. The claim did not accrue to the intestate, but arose in the course of administration and from the advancement of funds in the hands of the administrator. The estate, through the transaction by the administrator, became subrogated to the claim and lien of the mortgagee against

Jacob's interest in the land covered by it. The claim and the lien, excepting the element of precedence, were as potent as a note and mortgage or other legal lien, and were enforcible by the administrator. If the claims had been supported by legal instead of equitable liens there could be but little question that they were enforcible by the legal representative, and not by the heirs, and it would seem to be equally true that the heirs could not, in partition, have adjusted legal liens, with administration pending. This is the effect of the holding in *Fiscus* v. *Moore*, 121 Ind. 547, 7 L. R. A. 235, and *New* v. *New*, 127 Ind. 576, excepting that in the latter case the court expressed the *dicta* that a claim acquired by the administrator against an heir, after the death of the ancestor, might be treated as an advancement and adjusted in partition proceedings between heirs. Such a claim is in no sense an advancement, since "An advancement is an irrevocable gift by a parent to a child, in anticipation of such a child's future share of the parent's estate." 1 Am. and Eng. Ency. of Law, p. 216. Such a claim belongs first to the settlement of the debts of the estate. It is of the personal estate, and is not subject to distribution or to the control of heirs before final settlement by the administrator. Pending administration, and without some special proceeding to that end by or against the administrator, we observe no such interest by the heirs in such claim as would authorize, much less require, that it should be set up in partition. The administrator is not shown to have been a party to the partition proceeding, and is not precluded by the decree therein.

The lien as to Jacob having been directed against the ten acres, which, by the proceedings and deeds in partition, vested in him and his wife does not affect the mortgages of Eli to Rhodes and Heath, nor the

conveyance of his interest in the fifty acres to Seth J. and others, nor does it affect any of the mortgages or conveyances except as they involve said ten acres. The interest of Jacob's wife, acquired by said partition deed, is not sought to be upheld. The only remaining interests possible to be affected by the lien were those of Jacob and of Claypool & Ketcham. As to the interest of Jacob, from what we have already said, the ten acres must stand subject to the declared lien. As to Claypool & Ketcham, the only remaining inquiry is as to the effect of the record as notice to. them of the lien. It is insisted that the report of the administrator and the approval thereof, with the acceptance of his resignation, was in the nature of a final settlement, and bound the estate by its declaration that all debts due the estate had been collected and that by it the estate was finally settled. We do not understand the finding of facts to imply that the report disclosed the collection of all sums owing to the estate. It is found that the reports contained a credit for the sum paid in redemption. The existence of the mortgage executed by Jacob, remaining of record unsatisfied, the foreclosure proceeding, sale and redemption, together with the report disclosing the payment of the money in redemption without a corresponding charge for moneys received in repayment of such redemption, were sufficient to disclose the equity in favor of the estate against Jacob's interest in the land. Nor could the report be accepted by the appellants as a final settlement of the estate. Exceptions were pending and the administrator was not discharged but resigned. Thus the estate was left open for further administration. *Green* v. *Brown, Admr.*, 8 Ind. App. 110.

The court did not err, therefore, in its conclusion that Claypool & Ketcham's mortgage was junior to the lien of the estate as to said ten acres. In holding

that their lien and other liens were junior to the claim against Eli, as to the fifty-acre tract, the court erred.

The decree of the lower court is reversed, with instructions to restate its conclusions of law in accordance with this opinion and to render judgment pursuant thereto.