336 N.E.2d 840 (1975)
Cecil RAPER, Plaintiff-Appellant,
v.
UNION FEDERAL SAVINGS AND LOAN ASSOCIATION OF EVANSVILLE, Defendant-Appellee.
No. 1-175A2.
Court of Appeals of Indiana, First District.
November 12, 1975.
*841 Robert John, Evansville, for plaintiff-appellant.
D. Bailey Merrill, Michael J. Hayden, Evansville, for defendant-appellee; Merrill, Schroeder, Johnson & Evans, Evansville, of counsel.
LOWDERMILK, Judge.
Plaintiff-appellant Cecil Raper (Raper) appeals the overruling of his motion for summary judgment, and the granting of defendant-appellee's (Union Federal) similar motion.

FACTS:
Irene Maxwell Reed (Reed) was at the times pertinent to this appeal an elderly woman whose permanent residence was located in Henderson County, Kentucky.
On February 3, 1971, Reed was taken to Evansville by Raper and his wife, Olivia, for a temporary stay. During this visit, the Rapers and Reed went to Union Federal's Washington Square branch in Evansville. While at the branch office, Reed apparently agreed to changing the personal account at the Henderson, Kentucky, branch to a joint and survivorship account, with the Rapers as the other joint account parties, and to the transfer of over Sixteen Thousand Dollars ($16,000) to the Evansville bank. Testimony (by affidavit) of the bank employee was that Raper did all of the talking, while Reed merely consented at various times. The employee further deposed that the change in the type of account, and the transfer of money was for the sole purpose of enabling the Rapers to assist the enfeebled Reed, and that there was no intent that Reed relinquish any interest in the funds.
The membership card issued by Union Federal's Evansville branch clearly stated that any one of the joint members could withdraw a part of or the entire account.
On March 17, 1971, a hearing was begun in the Circuit Court of Henderson County, Kentucky, to determine Reed's competence, and she was ultimately found to be incompetent to manage her own affairs. As a result of this finding, the Kentucky court ordered the funds in Reed's account in Evansville frozen until the appointment of a legal guardian.
*842 Approximately one week later, Raper requested, in writing, the entire amount of the joint account. However, because of the court order freezing the account, Union Federal denied Raper's request.
Thereafter, Union Federal complied with a (Kentucky) court order which required the transfer of the account funds to the Farmer's State Bank in Henderson, which was the duly appointed committee (guardian) for Reed.
Following these events, Raper filed his complaint, Union Federal filed its answer and counterclaims, and both parties moved for summary judgment. The trial court, in granting summary judgment on Union Federal's motion, determined that the joint account was "null and void," and that all of the funds in the account were solely the property of Reed.

I.
Raper contends that Union Federal breached the account contract, and is in violation of common law and statutory duties. Each of these arguments is, of course, based upon the essential premise that there existed a valid and binding contract at the time Raper attempted to withdraw the balance of the joint account. Raper also argues that there was not sufficient evidence to sustain Union Federal's motion for summary judgment.
Union Federal contends that Raper's arguments based on breach of contract are inapposite because the trial court's judgment was that the contract was "null and void." Union Federal concludes that inasmuch as Raper's arguments do not attack the judgment of the trial court, there exist no grounds for a reversal of this cause.
The sustaining of Union Federal's argument would preclude a consideration of Raper's arguments. Therefore we must carefully examine the parties' contentions.

II.
While the trial court's findings of fact and conclusions of law are too extensive to present in toto, we deem it necessary to set forth certain pertinent parts, as follows:
"FINDING OF FACTS

"1. There is no genuine issue as to any material fact in this cause.
* * * * * *
"4. At all times referred to in Plaintiff's Complaint and Defendant's Amended Answer and Counterclaims, Irene Maxwell Reed was a citizen and resident of the Commonwealth of Kentucky and a resident of Henderson, Henderson County, Kentucky, and was an old person of unsound mind, incompetent, incapable of managing her own affairs, totally dependent upon others for help and assistance and was compliant and cooperative with those around her; but upon first impression she presented an acceptable outward appearance and was able to go out in society and function until she was called upon to accept responsibility.
"5. At all times referred to in Plaintiff's Complaint and Defendant's Amended Answer and Counterclaims, the plaintiff and his wife, Olivia Raper, were aware of Mrs. Reed's unsoundness of mind, incompetence and dependence upon others and need of assistance and supervision.
* * * * * *
"... the funds in Irene Maxwell Reed's name in the Henderson Branch of the defendant in the total sum of $16,106.84 were transferred to the Washington Square Branch of the defendant in Evansville, Indiana, and placed in a joint savings account in the name of Irene Maxwell Reed, the plaintiff and his wife, Olivia Raper, as Account No. 92918 in the Washington Square Branch of the defendant ..."

*843 "9. At the time of the transfer of the funds of Irene Maxwell Reed from the Henderson Branch of the defendant to the Washington Square Branch of the defendant in the joint account as heretofore stated in the previous paragraph of these findings, neither the defendant nor its assistant branch manager was aware that Irene Maxwell Reed was incompetent, ... when in fact Irene Maxwell Reed was incompetent by reason of her unsoundness of mind and total dependence on others to transact such business and the fact of her incompetency was then known to the plaintiff and to Olivia Raper, the plaintiff's wife.
* * * * * *
"13. On March 25, 1971, the plaintiff came to the Washington Square Branch of the defendant and requested that he be permitted to withdraw the funds from such joint account and presented to the defendant the plaintiff's written request to withdraw said joint account in the sum of $16,106.84 from the defendant.
* * * * * *
The defendant advised the plaintiff that the funds were frozen until a committee could be appointed for Irene Maxwell Reed by the Henderson Circuit Court and for this reason the defendant refused to permit the plaintiff to withdraw any of the funds according to his request.
"CONCLUSIONS OF LAW

* * * * * *
"6. The defendant rightfully and lawfully retained the funds held in Account No. 92918 in the Washington Square Branch of the defendant solely for Irene Maxwell Reed.
"7. The attempted transfer of the funds of Irene Maxwell Reed from the accounts in her own name in the Henderson Branch of the defendant to the Washington Square Branch of the defendant, which resulted in such funds being held in Account No. 92918 in the Washington Square Branch of the defendant in the joint names of Irene Maxwell Reed, the plaintiff and Olivia Raper, his wife, was and is null and void, and at all times such funds were in fact and in law the sole property of Irene Maxwell Reed and the plaintiff had no claim to all or any part of such funds either as against Irene Maxwell Reed or the defendant for each of the following separate and several reasons:
"a. For the reason that Irene Maxwell Reed was without legal capacity to transfer her funds from her own name to said joint account because of her unsoundness of mind and incapacity to manage her own affairs ...
"b. For the reason that the plaintiff fraudulently induced the defendant to open said Account No. 92918 and permit the transfer of funds from the accounts of Irene Maxwell Reed to said Account No. 92918 by fraudulently concealing from the defendant the fact that Irene Maxwell Reed was at such time a person of unsound mind and incapable of managing her own affairs, when in fact at the time of the attempted transfer Irene Maxwell Reed was a person of unsound mind incapable of managing her own affairs and without legal capacity to transfer her own funds into said Account No. 92918, and this fact was then known to the plaintiff and the plaintiff's wife."
The court's findings 1, 4, 5, 8 and 9 are supported by Union Federal's affidavits. Finding of fact number 13 is supported by Raper's only affidavit. Neither party submitted admissible[1] pleadings *844 which in any way controverted or challenged the facts stated by the other.
Prior to the court making the above findings, the parties agreed to the following stipulation:
"Plaintiff and defendant stipulate and agree that there is no genuine issue as to any material fact in this cause and that the only issues are issues of law, and that the parties agree that they will not appeal this cause on the ground that there is a material issue of fact involved."
We must now consider the above Findings of Fact and stipulation in light of Ind. Rules of Procedure, Trial Rule 56 and the effect of stipulations in general.

III.
Generally, stipulations of fact are looked upon with favor as a means of simplifying and expediting litigation. Schreiber v. Rickert (1943), 114 Ind. App. 55, 50 N.E.2d 879. The parties, however, may not agree as to the legal effect of the factual stipulations. App v. Class (1947), 225 Ind. 387, 75 N.E.2d 543; Groves v. Burton (1954), 125 Ind. App. 302, 123 N.E.2d 204. Once a proper factual stipulation is entered into, it is conclusive upon both the parties thereto and the court, Bruggner v. Shaffer (1965), 138 Ind. App. 183, 210 N.E.2d 439, except as to matters obviously intended to be controverted. Groves, supra; Faught v. State (1974), Ind. App., 319 N.E.2d 843.
The stipulation in the case at bar is somewhat unique in that it does not set forth specific facts; rather, the agreement is simply that there is no issue as to the factual background of the litigation.
We can only interpret the present stipulation to mean that each party conceded the validity of the facts asserted by the other. The determination of whether there is a genuine issue of material fact is, of course, for the court. TR. 56; Verplank v. Commercial Bank of Crown Point (1969), 145 Ind. App. 324, 251 N.E.2d 52. It is not for the parties to say whether the facts present a contestable issue. We further view the above stipulation as an agreement to abide by the findings of fact as made by the trial court. It has been held that a party may waive the right to appeal. See, Southern Indiana Power Co. v. Cook (1914), 182 Ind. 505, 107 N.E. 12. Here, Raper waived but a portion of that right, and received as consideration similar forbearance by Union Federal. See, Moore v. Moore (1922), 81 Ind. App. 169, 135 N.E. 362. We believe Raper is bound by this agreement, especially in light of the intent expressed in his brief to abide by the terms of the stipulation.
The above holding with regard to the stipulation accords generally with the procedure followed in considering joint motions for summary judgment. In Podgorny v. Great Central Ins. Co. (1974), Ind. App., 311 N.E.2d 640, it was stated that
"... for purposes of determining whether to grant the motion: (a) facts set forth by the opponents' affidavits will be taken as true; (b) the depositions, admissions, etc. are to be liberally construed in favor of the opponent; and (c) any doubt as to the existence of a genuine issue as to a material fact must be resolved against the proponent of the motion. Doe v. Barnett (1969), 145 Ind. App. 542, 251 N.E.2d 688; Ross v. Farmers Insurance Exchange (1971), Ind. App., 277 N.E.2d 29." (Our emphasis.)
Thus, while the trial court considers each affidavit as true, in this case, each party took the additional step of agreeing that the facts asserted by the other were correct and without contradiction.[2]
*845 Notwithstanding the stipulation, we note that Raper did not assert below that there was an issue of fact as to Reed's competency; that the trial court's findings of fact included a finding that Union Federal refused to honor Raper's request although a joint account existed; and that on appeal Raper in no way attacks the finding that Reed was incompetent when the joint account was created. Thus, even if Raper had not stipulated as above, there would exist no question on appeal as to whether there was a true issue of fact since the facts were never attacked as insufficient or as presenting a contestable issue to be resolved by the trier of fact.
We recognize that the mere fact that both Raper and Union Federal filed motions for summary judgment does not establish the absence of an issue of material fact. TR. 56(C); Mutual Hospital Ins., Inc. v. Klapper (1972), Ind. App., 288 N.E.2d 279, trans. den. Ind., 312 N.E.2d 482; Fischer v. Kaylor (1969), 145 Ind. App. 148, 250 N.E.2d 19.
Further, as was stated in Collins v. Dunifon (1975), Ind. App., 323 N.E.2d 264, 269:
"The issue of unsoundness of mind is ordinarily a question for the trier of fact. Fiscus v. Turner (1890), 125 Ind. 46, 24 N.E. 662; Schuff v. Ransom (1881), 79 Ind. 458. Therefore, if the court must weigh conflicting evidence to reach a decision, summary judgment would not be appropriate." (Our emphasis.)

In the case at bar, there was no conflicting evidence as to any one issue of fact, because the parties asserted distinctly different sets of facts to support different theories of recovery. As noted, these differing theories are reflected by the court's Findings of Fact which draw upon the opposing affidavits. In effect, the court's findings are unassailable by Raper because: (1) he agreed the facts were true; and (2) the court found all of his asserted facts as true.

IV.
For the reasons set forth above, the question of a material issue of fact is not before us. All that remains to be considered is whether Raper's arguments constitute an attack upon the conclusions of law and judgment of the trial court. Each appeal must challenge the specific decision of the lower court. Plank v. Hinkle (1919), 73 Ind. App. 663, 125 N.E. 479; Taylor et al. v. Meskimen et al. (1955), 234 Ind. 485, 128 N.E.2d 872. The conclusions set forth above clearly state that Reed was incompetent when the account contract was made, and that the joint account was, therefore "null and void." We find no argument whatsoever by Raper which attacks this conclusion of the court. As noted above, Raper's arguments are that an existing contract was breached. These arguments make no mention of the granting of summary judgment based on Union Federal's counterclaims which allege that Reed did not have the capacity to enter the joint account contract.
In conclusion, Raper does not contend on appeal that the court erred in finding that Reed was incompetent at the time the joint account was created. Further, Raper does not challenge the conclusion, drawn from the above fact, that the account contract was void. Therefore, under the facts of this particular case, we need not consider Raper's arguments on appeal. Plank v. Hinkle, supra; Taylor et al. v. Meskimen et al., supra.
Judgment affirmed.
ROBERTSON, C.J., and LYBROOK, J., concur.
NOTES
[1] Raper did submit a brief in support of his motion for summary judgment. However, a brief does not comply with the requirements of Ind.Rules of Procedure, Trial Rule 56(C). See, Schill v. Choate (1969), 144 Ind. App. 543, 247 N.E.2d 688; Apple; Oakes v. Apple et al. (1971), 149 Ind. App. 529, 274 N.E.2d 402; Glosser et al. v. New Haven (1971), 256 Ind. 33, 267 N.E.2d 67.
[2] Raper takes issue with the admissibility of some of Union Federal's affidavits. We agree that an affidavit may not contain conclusions of law, and that small portions of Union Federal's evidence in support of its motion should not have been considered for this reason. See, Renn v. Davidson's Southport Lumber Co., Inc. (1973), Ind. App., 300 N.E.2d 682. We do not, however, consider the remainder of Union Federal's evidence improper or inadmissible.